UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| GWENDOLYN WILKERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 2:08-CV-26 |
| | ) | |
| MENARD, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the court on the Motion to Amend Judgment filed by the plaintiff, Gwendolyn Wilkerson ("Wilkerson"), on April 26, 2009 (docket at 31). The defendant, Menard, Inc. ("Menard") filed a brief in opposition to the motion on May 8, 2009 (docket at 32) and Wilkerson filed a reply brief on May 9, 2009 (docket at 33). For the reasons discussed herein, the motion to amend judgment is DENIED.

## FACTUAL BACKGROUND

The underlying facts of this case were recited at length in an order entered by this court on April 15, 2009 (docket at 29). However, for the sake of clarity, the court repeats that recitation of facts below (without citation to the parties' briefs on the motion for summary judgment).

On March 5, 2007, Wilkerson, an African-American, attended a job fair held at the Indiana University Northwest campus in Gary, Indiana. Menard, a Wisconsin-based corporation that operates a popular chain of home improvement retail stores in Indiana and other locations throughout the United States, was present at that job fair. The company was represented by Anne Hammersmith, Menard Store Operations Human Resources Recruiter, and Veronica

Reyes, Human Resources Coordinator at the Menard retail store in Merrillville, Indiana. During the course of the job fair, Wilkerson visited the booth that Menard had set up, at which the company displayed general information about the corporation and its various employment programs. Hammersmith gave Wilkerson a one-page document that included information about a Human Resource Coordinator position ("job description"). That document included a description of the company, compensation and benefits information pertaining to the Human Resource Coordinator position, and the required qualifications for the position. One of the qualifications listed, and the one that is at the heart of the dispute in this case, was the degree requirement. That provision stated that a person wishing to apply for the position must have a "Bachelor's Degree in Human Resource Management or Business Management (or Administration) with a focus or emphasis in Human Resources." The job description also included instructions directing persons who might be interested in the position to "Mail, Email, or FAX cover letter and resume to: Anne Hammersmith . . . ."

When Wilkerson visited the Menard exhibit at the job fair, she handed Hammersmith a copy of her resume. Wilkerson's resume stated that she had a "Bachelor of Science in Management from Indiana Wesleyan University" and that she had taken courses in "Executive Management, Supervision, Human Resources, Customer and Employer/Employee Relations and Conflict Resolution." The remainder of Wilkerson's resume, while impressive, makes no mention of any work experience in the field of human resources. Thus, the only reference the resume makes concerning human resources is the fact that Wilkerson took a course or courses dealing with the subject.

On March 16, 2007, Wilkerson sent an e-mail to Hammersmith, in which she indicated that she was interested in the Human Resource Coordinator position that was explained in the job description. Defendant's Exhibit 3. Wilkerson's e-mail read, in its entirety, as follows:

> Hi Anne Hammersmith:
>
> It was a pleasure speaking with you on March 5, 2007 at the job fair held at Indiana University Northwest in Gary, Indiana.
>
> At the fair you gave me a job description of Human Resource Coordinator. I am very interested in this position.
>
> Do you have any positions available in Indiana (Merrillville, Schererville, Valparaiso, Hammond, Highland, Gary)?
>
> I provided you with a resume and comments from various workshops I presented. However if you would like for me to forward another set I will do so.
>
> Once again, it was a pleasure speaking with you. Thank you for your time.
>
> Gwen Wilkerson

On March 18, 2007, Hammersmith responded to Wilkerson's e-mail via a responsive e-mail, which read in its entirety as follows:

> Gwen,
>
> Good Evening. Unfortunately, for our Human Resource Coordinator positions we do require a Human Resource Management degree. Thank you for your interested [sic] and good luck in all of your endeavors.
>
> Sincerely,
>
> Anne Hammersmith
> Menard, Inc.
> Operations Human Resources Recruiter

The following day, March 19, 2007, the two women again had an exchange of e-mails. This

3

exchange read as follows:

> Hi Anne Hammersmith:
>
> This is Gwen Wilkerson again who you met at the job fair at Indiana University Northwest on March 5, 2007. Your email stated I had to have a degree in Human Resource Management.
>
> I looked at the job description again and it says a Bachelor's Degree in Human Resource Management or Business Management (or Administration). My degree is in Business Management.
>
> Please clarify. Thank you.
> . . .
>
> Gwen,
>
> Hello. It has to be in Human Resource Management.
>
> Anne

Displeased with Hammersmith's response, Wilkerson wrote a letter to Larry Menard in Eau Claire, Wisconsin, the Operations Manager for the corporation. In that letter, Wilkerson explained that she visited the Menard booth at the job fair, gave Hammersmith her resume, and received a copy of the Human Resources job description. Wilkerson also summarized the e-mail exchanges she had with Hammersmith. Wilkerson then wrote as follows:

> The job description *CLEARLY* states Bachelor's Degree in Human Resource Management or Business Management (or Administration). My resume also stated I had extensive coursework in Human Resources and I possess all of the other listed requirements.
>
> I should have never been given a job description with explicit guidelines only to be told what is on the job description is not what it really says, when it is unquestionably clear.
>
> There is no logical explanation for this conduct exuded by Anne Hammersmith and I don't believe this is the type of activity Menard condones. This behavior is totally against guidelines of the U.S. Equal Employment Opportunity

> Commission.
>
> I am therefore, asking you to respond to this initial letter. Thank you for your time.

(Emphasis in original.) Michael Hilfiker, a Menard Human Resource Director, responded to Wilkerson's letter in a letter dated March 31, 2007. Hilfiker's response stated as follows:

> Ms. Wilkerson
>
> I am in receipt of your letter and would like to thank you for your interest in a career with Menard.
>
> According to Menard Human Resource Coordinator position description, a successful candidate will possess a Bachelor's Degree in Human Resource Management or a Bachelor's Degree in Business Management (or Administration) with a focus or emphasis in Human Resources.
>
> Please mail a copy of your resume and transcripts for my review. If you meet our qualifications, I will forward your information to a store with an open Human Resource Coordinator position.
>
> Thanks again for your interest in a career with Menard!

While Wilkerson acknowledged that she received this letter, she also admitted in her deposition that she did not forward her resume or transcripts to Hilfiker, nor did she make any further attempts to contact him or any other representative of Menard to follow up on the matter. When asked during her deposition why she did not send her resume or transcripts to Hilfiker and why she made no further attempt to contact anyone at Menard after receiving Hilfiker's letter, Wilkerson stated that "[w]hen I received his letter I was already crushed." In her brief in opposition to the motion for summary judgment, Wilkerson elaborated on this point, and her apparent state of mind after she received Hilfiker's letter, by stating that she believed that Hammersmith "misrepresented the job qualifications and essentially informed Wilkerson that she would not be considered for a [sic] HRC position. Wilkerson was appalled by

5

Hammersmith's misrepresentation and mailed a letter to Larry Menard explaining the situation and seeking an explanation. . . . [Hilfiker's letter] provided no explanation for Hammersmith's misrepresentation, no apology and no assurance that Menard was in fact an equal opportunity employer. Wilkerson did not respond to Hilfiker's letter. As a result of her dealings with Hammersmith and Hilfiker, Wilkerson believed she was not welcome at Menard because of her race and saw no point in pursuing the HRC position further." It is undisputed that Wilkerson never formally applied for any position with Menard, either during the job fair or at any time after. Wilkerson filed the present lawsuit on January 25, 2008, alleging race discrimination in violation of 42 U.S.C. § 2000e and 42 U.S.C. § 1981.

## DISCUSSION

In its previous order, the court granted a motion for summary judgment that had been filed by Menard. *Id*. The court believed the entry of summary judgment in favor of Menard on April 15, 2009, resolved all issues presented by Wilkerson's complaint. However, Wilkerson filed the present motion pursuant to Fed.R.Civ.P. 59(e), asking the court to reconsider the previous entry of summary judgment and amend that judgment to permit Wilkerson to pursue her claim of race discrimination. Motion to Amend, p. 1. More specifically, Wilkerson argues the court's April 15 order failed to address an issue she raised in this case. *Id*. Wilkerson maintains that "the court . . . did not address Wilkerson's argument that a discriminatory act took place when Ms. Hammersmith excluded her from further exclusion [sic], by e-mail, shortly after the job fair at Indiana University Northwest." *Id*.[1] In other words, Wilkerson argues that

---

[1] There is an obvious typographical error in Wilkerson's motion. Clearly, she intended to state that "Hammersmith excluded her from further <u>consideration</u> . . ." for the position of Human Resource Coordinator.

6

Hammersmith's e-mails to her after the job fair constituted a discriminatory act and that the court failed to recognize and/or address this matter in its previous order.

The purpose of a motion to amend a judgment pursuant to Fed.R.Civ.P. 59 was summarized in a recent decision issued by a court in this district:

> The purpose of a Rule 59(e) motion is to bring to the court's attention "a manifest error of law or fact, or newly discovered evidence." *Bordelon v. Chicago School Reform Bd. of Trustees,* 233 F.3d 524, 529 (7th Cir. 2000) (citing *LB Credit Corp. v. Resolution Trust Corp.,* 49 F.3d 1263, 1267 (7thCir. 1995)). It "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Id.* (quoting *Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir. 1996)). It is not intended as an opportunity to reargue the merits of a case. *See Neal v. Newspaper Holdings, Inc.* 349 F.3d 363, 368 (7th Cir. 2003) (affirming district court's decision to deny appellants' Rule 59(e) motion to alter or amend judgment where plaintiff simply reargued the merits of his case); *see also Ahmed v. Ashcroft,* 388 F.3d 247, 249 (7th Cir. 2004) ("A motion that merely republishes the reasons that had failed to convince the tribunal in the first place gives the tribunal no reason to change its mind."). Moreover, the moving party must "clearly establish" a manifest error of law or an intervening change in the controlling law or present newly discovered evidence to succeed under Rule 59(e). *Romo v. Gulf Stream Coach, Inc.,* 250 F.3d 1119, 1122 n. 3 (7th Cir. 2001).

*Calligan v. Wilson*, 2009 WL 1659910 *2 (N.D.Ind., June 15, 2009). In the present case, while Wilkerson contends the court failed to address her argument that she was discriminated against when Ms. Hammersmith sent her e-mails informing Wilkerson that she was not qualified for the job of human resource coordinator, the court finds that the motion to amend is, in reality, an attempt to reargue plaintiff's case.

This court summarized its conclusion concerning Wilkerson's case in its prior order of April 15, stating as follows:

> It is clear to the court that this case arose largely as a result of an apparent misunderstanding or, perhaps, a semantical argument. That misunderstanding led to this lawsuit, which in turn is based solely and completely on Wilkerson's

> conclusory allegations and speculation. Wilkerson fails to present sufficient evidence to sustain her burden of establishing a *prima facie* case of discrimination.

Memorandum of Opinion and Order, docket at 29, p. 1. The operative phrase in that paragraph, this court concluded, was that Wilkerson's claim was "based solely and completely on [her] conclusory allegations and speculation." The evidence is clear that Wilkerson became convinced, immediately upon receiving Ms. Hammersmith's e-mails, that she was being excluded from consideration for a position with Menard because of her race. Her present motion to amend the judgment provides no basis for disturbing the court's prior analysis or conclusion.

In her motion, Wilkerson argues that she was "rejected" from consideration for employment, as evidenced by Ms. Hammersmith's e-mails, and "[a]t that point Wilkerson was treated differently because of her race, *i.e.*, she was excluded from consideration." Motion to Amend, pp. 1-2. Wilkerson also contends that Menard never met its burden to articulate a legitimate, nondiscriminatory reason for not considering her for employment. *Id.*, p. 2.

In its response, Menard argues that "[w]ithout the support of any newly discovered material evidence or legal authority to support her position, Wilkerson's motion to amend judgment regurgitates the same arguments that were addressed by the Court in its Opinion and Order . . . ." Defendant's Response, p. 1. Menard contends that it "does not believe that any of Wilkerson's arguments have ripened with age and are as equally unconvincing the second time around." *Id.*, p. 2.

Wilkerson's contention that Menard never offered a legitimate, nondiscriminatory reason for not considering her for a position as human resource coordinator is incorrect. Menard presented convincing evidence that Hammersmith did not believe that Wilkerson's education and

8

work experience qualified her for such a position. Assuming for the sake of argument that Ms. Hammersmith was wrong on this point, Hilfiker provided Wilkerson with an opportunity to pursue the matter further by forwarding a copy of her resume and college transcript to him. Wilkerson conceded that she never did so.[2] Thus, Wilkerson never actually applied for any position with Menard. Having stated all this, the court notes that Menard never even had to offer any explanation, given that Wilkerson never established a *prima facie* case of discrimination in the first place. *See* Memorandum of Opinion and Order.

Wilkerson presents no new evidence, no new legal authority, and no new argument in her motion to amend. The court believes that its rationale for granting summary judgment in favor of Menard was adequately set forth in its previous order. For these reasons, Wilkerson's motion to amend is denied.

## CONCLUSION

For the reasons discussed above, the motion to amend judgment filed by the plaintiff,

---

[2] Wilkerson attempts to argue that she "was not required to take any additional steps after she was rejected by Hammersmith. If she had to make a special appeal to Hilfiker, because of her race, that constitutes different treatment because of race." Motion to Amend, p. 2. Once again, Wilkerson's argument is based on her own conclusions. Hilfiker offered her an opportunity to provide him with documentation showing that she was qualified for a position with Menard. Yet, she goes so far as to characterize this offer as another example of how she was discriminated against on the basis of race. This was apparently Wilkerson's sincere subjective belief. But if that was the case, there was apparently nothing Menard could have done to appease her or disavow her of her feeling that she was the victim of intentional discrimination.

9

Gwendolyn Wilkerson, is DENIED.

Dated: July 7, 2009.

                                                                                            /s/   William C. Lee
                                                                                                   William C. Lee, Judge
                                                                               United States District Court
                                                                              Northern District of Indiana